IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

R. BRYAN HINKLE AND MATILDA
GARCIA, *et al.*,

    Plaintiffs,

vs.                                                                   No. 1:16-cv-01048 KG/SCY
                                                                  consolidated with 1:16-cv-01051 KG/SCY
                                                                  and 1:16-cv-01052 KG/SCY

UNITED STATES OF AMERICA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant "United States' Motion for Summary Judgment," filed October 26, 2017. (Doc. 33). Plaintiffs responded on November 9, 2017, and Defendant replied on November 29, 2017. (Docs. 37 and 40). Having considered the parties' briefs and proffered exhibits, the Court grants Defendant's Motion.

*I. Background[1]*

Plaintiffs[2] filed their complaints[3] in this Court seeking a refund of penalties imposed under 26 U.S.C. § 6707A by the IRS for tax years 2007 and 2008. In April and May 2009, Plaintiffs were notified by Internal Revenue Agent ("IRA") Russell Gadway, on behalf of the

---

[1] Unless otherwise noted, the following summary of material facts is undisputed.

[2] The record generally shows that the Plaintiffs were treated similarly, if not identically, by the Internal Revenue Service ("IRS"). Nonetheless, some documents or actions were taken with respect to one set or combination of Plaintiffs. Those discrepancies are noted when relevant.

[3] This is a tax refund case originally brought by R. Bryan Hinkle and Matilda Garcia that was filed in this Court on September 22, 2016, under 26 U.S.C. § 7422 and 28 U.S.C. § 1346(a)(1). (Doc. 1). Also on September 22, 2016, William D. Hinkle and Gene E. and Betty L. Hinkle filed their complaints in this Court, 1:16-cv-01051 LF/GJF (Doc. 1) and 1:16-cv-01052 SCY/WPL (Doc. 1), respectively. On February 7, 2017, this Court, upon the parties' joint motion (Doc. 16), consolidated this case with the other Hinkle tax refund cases. (Doc. 17).

IRS, that their 2007 tax return had been selected for examination.[4] (Doc. 34-1) at 1-2, 23-24, and 44-45. On June 14, 2010, each set of Plaintiffs received a letter from IRA Gadway referencing tax years 2007 and 2008, stating, in pertinent part: "[t]his correspondence is to see if I can convince you to agree to the enclosed examination change report. This report is different from previous ones in that the penalties have been waved (sic) if you agree at my level when you relied on your preparer for taking the deduction." *Id.* at 3, 25, and 46. Each letter was accompanied with a Form 4549 document titled "Income Tax Examination Changes," and this form assessed an accuracy-related penalty under 26 U.S.C. § 6662. *Id.* at 4-5, 26-27, and 47-48. On July 7, 2010, William D. Hinkle signed a Form 4549 document which assessed neither a § 6662 penalty nor any other penalty. *Id.* at 49-50. On July 11, 2010, Gene E. and Betty L. Hinkle also signed a Form 4549 document which assessed neither a § 6662 penalty nor any other penalty; and, R. Bryan Hinkle and Matilda Garcia signed their Form 4549 document which assessed neither a § 6662 penalty nor any other penalty on July 12, 2010, and July 13, 2010, respectively. *Id.* at 6-7, and 28-29.

On July 19, 2010, the IRS notified R. Bryan Hinkle and Matilda Garcia, and William D. Hinkle, that it was considering assessing penalties under 26 U.S.C. § 6707A for failure to disclose a listed transaction under 26 C.F.R. § 301.6011-4(b)(2) and 26 U.S.C. § 6111 and § 6112. (Doc. 34-1) at 31, 51. On September 4, 2010, Gene E. and Betty L. Hinkle received a letter from Deborah M. Daub on behalf of William P. Marshall, North Atlantic Area Director of the IRS, stating "[w]e've reviewed and accepted the examination report that we previously gave to you regarding the examination of your tax return for [2007 and 2008]. We do not plan to

---

[4] It is not clear to the Court if, and when, the IRS notified the Plaintiffs that it selected their 2008 tax returns for examination. But for purposes of determining this motion, this evidence, if available would not be material.

2

make any additional changes to your return(s) unless we change a partnership, S-Corporation, trust, or estate tax return in which you have an interest."[5] *Id.* at 8.

In late March 2011, each Plaintiff received a Form 4549-A titled "Income Tax Discrepancy Adjustments" assessing a civil penalty under § 6707A.[6] (Doc. 34-1) at 9-10, 32-33, and 52-54. On April 10, 2011, Robert E. Bivins, the Plaintiffs' accountant, sent a letter to IRA Gadway protesting the § 6707A penalty in the March 2011 Form 4549-A documents. *Id.* at 11-12, 34-35, and 55-56. Mr. Bivins notes "[t]he taxpayer was further assured no penalties would be assessed through acceptance and payment of taxes alleged to be due, which assurance has apparently been broken." *Id.* at 12, 35, and 56.

Over a year later, on September 3, 2012, the Plaintiffs received "Notice of Penalty Charge" from the IRS for tax years 2007 and 2008. *Id.* at 13-16, 36-39, and 57-60. A week later, Mr. Bivins responded with a letter protesting the assessment of § 6707A penalties against Plaintiffs in the Notice of Penalty Charges. *Id.* at 17, 40, and 61. On September 19, 2013, Mr. Bivins completed and submitted Form 843 documents for the Plaintiffs for tax years 2007 and 2008, requesting an abatement of the § 6707A penalty. *Id.* at 19-20, 42-43, and 63-64. On December 26, 2013, Gene E. and Betty L. Hinkle received a letter from Jeffrey E. Barrett, Operations Manager, AM Operations 1, on behalf of the IRS, referencing correspondence on

---

[5] There is a similar, undated letter addressed to R. Bryan Hinkle and Matilda Garcia before the Court. (Doc. 34-1) at 30.

[6] Gene E. and Betty L. Hinkle were assessed $13,406.00 for tax year 2007 and $13,276.00 for tax year 2008. (Doc. 34-1) at 10. R. Bryan Hinkle and Matilda Garcia were assessed $11,798.00 for tax year 2007 and $14,584.00 for tax year 2008. *Id.* at 33. William D. Hinkle was assessed $16,181.00 for tax year 2007 and $15,490.00 for tax year 2008. *Id.* at 54.

September 19, 2013.[7] *Id.* at 21. This letter states, in pertinent part: "Dear Taxpayer: Thank you for your correspondence dated 09/09/13. In reviewing your account, our records show that all penalties have been waived for the tax years listed above, as agreed by Internal Revenue Agent Mr. Russell Gadway." *Id.*

Turning to the instant matter, the Court construes Plaintiffs' complaints as asserting breach of contract and, alternatively, equitable estoppel against the United States. Defendant moves for summary judgment on both claims.

## II. Legal Standard

Summary Judgment is appropriate if there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Securities, Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the non-movant to come forward with evidence showing a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996) (citation omitted). The non-moving party may not avoid summary judgment by resting upon mere allegations or denials of his or her pleadings. *Bacchus, Indus., Inc.*, 939 F.2d at 891.

---

[7] There is no evidence in the record to suggest that the other Plaintiffs received a similar letter from Mr. Barrett or the IRS.

III.  *Discussion*

   A. *Enforceable Contract*

"The IRS's authority to settle disputed tax liabilities (including refund claims) is described in Tax Code [26 U.S.C. §§ 7121 and 7122] and in the Treasury Department's implementing regulations."[8] *Brach v. United States*, 443 Fed. Appx. 543, 548 (Fed. Cir. 2011). "Purported agreements that do not meet these requirements are not enforceable as contracts binding the IRS." *Id.* (citing *Botany Worsted Mills v. United States*, 278 U.S. 282, 288-289 (1929)).

Under § 7121(a), "[t]he Secretary is authorized to enter into an agreement in writing with any person relating to the liability of such person (or of the person or estate for whom he acts) in respect of any internal revenue tax for any taxable period." Further, "[a]ll closing agreements shall be executed on forms prescribed by the Internal Revenue Service." 26 C.F.R. § 301.7121-1(d)(1). The appropriate forms are Form 866 or Form 906. Rev. Proc. 68-16, Sec. 6. Generally, Form 4549 documents do not create closing agreements settling disputed tax liability. *Brach*, 443 Fed. Appx. at 548 ("But these [Form 4549] documents do not satisfy the regulations under which the IRS may settle a disputed tax liability. To begin with, they are not on the forms identified for such agreements….[n]either do the Form 4549 documents include the formal legal language indicating the IRS's intent to settle that the IRS has prescribed for use in such agreements."); *see also Shrader v. Tomecek*, 1980 WL 1766, at *2 (S.D. Ohio) ("Form 4549 does not constitute a formal closing agreement pursuant to 26 U.S.C. § 7121.").

Here, the evidence in the record before the Court construed in the light most favorable to Plaintiffs would not allow a reasonable jury to find that there was a binding contract on the IRS

---

[8] 26 U.S.C. § 7122 deals with compromises of civil or criminal cases arising under the internal revenue laws.

precluding it from assessing the § 6707A penalty. There is no evidence of a closing agreement in a Form 866 document or a Form 906 document between the IRS and Plaintiffs. Nonetheless, Plaintiffs argue that an enforceable settlement agreement exists between the IRS and Plaintiffs. Plaintiffs point to the December 26, 2013, letter from the IRS as evidence of an offer, specifically that part stating, "all penalties have been waived for the tax years [2007 and 2008]." (Doc. 34-1) at 21. Plaintiffs then assert they accepted this offer by signing the Form 4549 documents in July 2010. (Doc. 34-1) at 6-7, 28-29, and 49-50. Plaintiffs contend the existence of a contract and that the IRS breached this contract by assessing the § 6707A penalties.

The Court disagrees for at least two reasons. First, the December 26, 2013, letter does not amount to an offer as there is no promise by the IRS to take or forego some action. At most, this letter implies an agreement to waive penalties, as defined by IRA Gadway's June 14, 2010, letter accompanying the Form 4549 documents. The June 14, 2010, letter refers to previous Form 4549 documents, and the only previous Form 4549 documents show an accuracy-related penalty under § 6662 and not a § 6707A penalty. In other words, Plaintiffs have failed to provide evidence of a Form 4549 document assessing a § 6707A penalty prior to IRA Gadway's June 14, 2010, letter.

Second, neither the Form 4549 documents nor the December 26, 2013, letter are in a form required to create a binding closing agreement under 26 C.F.R. § 301.7121-1(d)(1). Plaintiffs cite *Haiduk v. Commissioner of Internal Revenue*, and other similar United States Tax Court memorandum opinions, as authority to navigate around this closing agreement standard. *See Haiduk*, 60 T.C.M. (CCH) 864 (1990) ("Formal stipulations of settlement or decision documents are not absolute prerequisites to a binding agreement to settle pending litigation if the intent of the parties to settle and the terms of the settlement are otherwise ascertainable.").

However, cases like *Haiduk* only apply to agreements in docketed cases. *See also Mueth v. United States*, 2008 WL 2625909, at *8 (S.D. Ill.) ("In other words, the § 7121 statutory framework (providing for closing agreements) is the exclusive method to administratively settle a tax liability until a suit is docketed in Tax Court or District Court. Once suit is filed, settlement need not be accomplished via § 7121 closing agreement and can be effected by other means."). The cases cited by Plaintiff are inapplicable because the supposed agreement occurred before this case was filed in September 2017. Therefore, the Court concludes there is no genuine issue of material fact as to whether there was an enforceable contract precluding the IRS from assessing the § 6707A penalty.

### B. Equitable Estoppel

"The courts invoke the doctrine of estoppel against the government with great reluctance." *United States v. Browning*, 630 F.2d 694, 702 (10th Cir. 1980). There are four elements necessary to obtain equitable estoppel against the government:

> (1) the party to be estopped must know the facts; (2) he must intend that his conduct will be acted upon or must so act that the party asserting the estoppel has the right to believe that it was so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

*Tsosie v. United States*, 452 F.3d 1161, 1166 (10th Cir. 2006) (quoting *Lurch v. United States*, 719 F.2d 333, 341 (10th Cir. 1983)). "Equitable estoppel does not lie against the government in the same manner as it does against private litigants." *Kowalczyk v. INS.*, 245 F.3d 1143, 1149 (10th Cir. 2001) (citing *Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 419 (1990)). "In the course of rejecting estoppel arguments asserted against the government, the Supreme Court has indicated that estoppel may lie against the government if some type of 'affirmative misconduct' can be shown." *Id.* (quoting *INS v. Hibi*, 414 U.S. 5, 8 (1973)).

7

"Affirmative misconduct means an affirmative act of misrepresentation or concealment of a material fact." *Board of County Com'rs of County of Adams v. Isaac*, 18 F.3d 1492, 1499 (10th Cir. 1994) (citing *United States v. Ruby Co.*, 588 F.2d 697, 703-704 (9th Cir. 1978)); *see also Shafmaster v. United States*, 707 F.3d 130, 136 (1st Cir. 2013) ("Although there is no settled test for what constitutes affirmative misconduct, it must at least include an affirmative misrepresentation or affirmative concealment of a material fact by the government.") (Internal quotation marks and citation omitted). "Mere negligence, delay, inaction, or failure to follow agency guidelines does not constitute affirmative misconduct." *Isaac*, 18 F.3d at 1499 (citing *Fano v. O'Neill*, 806 F.2d 1262, 1265 (5th Cir. 1987)).

The parties do not specifically address the elements of equitable estoppel. At most, Plaintiffs argue that the evidence in the record demonstrates that Plaintiffs reasonably relied on IRA Gadway's representations and they did not know the falsity of those representations. Defendant argues that in any case there is no genuine issue of material fact regarding affirmative misrepresentation by the IRS. For the reasons stated below, the Court agrees with Defendant.

The evidence establishes that IRA Gadway waived the § 6662 accuracy-related penalty.[9] IRA Gadway's June 14, 2010, letter states that previous penalties would be waived for signing

---

[9] The Court notes the unsettled question whether the representations of an IRS revenue agent, like IRA Gadway, can bind the IRS to informal settlements of tax disputes. *See Browning*, 630 F.2d at 702 ("It is fundamental that the United States is not estopped by representations made by an agent without authority to bind the government in a transaction."); *Massaglia v. Comm'r*, 286 F.2d 258, 262 (10th Cir. 1961) ("But neither the duty of consistency, nor the principles of equitable estoppel bind the Commissioner to unauthorized acts of his agents"); *Shafmaster*, 707 F.3d at 136 ("It does not appear that any circuit has used an informal tax settlement to bind the *government* under estoppel principles, although it also appears that the question simply may never have been addressed."); *see also Meyers v. Comm'r*, 79 F.3d 1150 (Table), 1996 WL 116818, at *2 ("As a Revenue Officer, Roberts was not authorized to enter into a binding agreement with the Meyers. The Meyers were charged with knowing Roberts' limited authority so they cannot demonstrate that their reliance was reasonable. Since only a private letter ruling

the accompanying Form 4549 documents. (Doc. 34-1) at 3-5, 25-27, and 46-48. The accompanying 4549 documents assess the § 6662 penalty.

Plaintiffs argue the § 6707A penalty also was waived and they offer the deposition testimony from Mr. Bivins, who testified that IRA Gadway represented to him that IRA Gadway had settlement authority on behalf of the IRS. (Doc. 37-1) at 7 (depo. at 72). Mr. Bivins also testified that he discussed the § 6707A penalty with IRA Gadway and that there were previous examination change reports, presumably Form 4549 documents, assessing a § 6707A penalty. *Id.* at 2 (depo. at 27); *id.* at 3-5 (depo. at 29-31). While this Court considers the evidence, including the documents, in the light most favorable to Plaintiffs, it concludes Mr. Bivins' reliance was not reasonable, specifically that the § 6707A penalty was included in a Form 4549 document prior to IRA Gadway's June 14, 2010, letter. Thus, based on the evidence before the Court, a reasonable jury could only find that IRA Gadway's June 14, 2010, letter waived the § 6662 penalty, and not the § 6707A penalty.

Additionally, considering the December 26, 2013, letter from Manager Barrett, the Court finds that there is no genuine issue of material fact whether the IRS engaged in affirmative misconduct.[10] The December 26, 2013, letter does not specifically mention the § 6707A penalty but does reference correspondence dated September 19, 2013, the date the Form 843 documents were filed. (Doc. 34-1) at 21-22. This letter references a waiver of "all penalties" as agreed by IRA Gadway. *Id.* at 21. Construed in the light most favorable to Plaintiffs, this letter raises a question whether Manager Barrett, on behalf of the IRS, included the § 6707A penalty in the

---

or a closing agreement by authorized agents bind the government, and because the Meyers did not obtain such documentation, their estoppel claim fails").

[10] As noted, the record demonstrates that only Gene E. and Betty L. Hinkle received a letter of this kind from the IRS. For the purposes of its analysis, the Court assumes that all Plaintiffs received a similar letter from the IRS.

9

December 26, 2013, letter. Even so, this letter does not demonstrate affirmative misrepresentation or concealment necessary for a reasonable jury to find the IRS engaged in affirmative misconduct. Thus, Plaintiffs have not established a genuine issue of material fact requiring their claim of equitable estoppel to proceed to trial.

Therefore, the Court grants United States' Motion for Summary Judgment.

IT IS THEREFORE, ORDERED that

1. United States' Motion for Summary Judgment (Doc. 33) is granted;
2. summary judgment will be entered in Defendant's favor on Plaintiffs R. Bryan Hinkle and Matilda Garcia's Complaint (Doc. 1), filed in this case;
3. summary judgment will be entered in Defendant's favor on Plaintiff William D. Hinkle's Complaint filed in 1:16-cv-01051-KG-SCY (Doc. 1);
4. summary judgment will be entered in Defendant's favor on Plaintiffs Gene E. and Betty L. Hinkle's Complaint filed in 1:16-cv-01052-KG-SCY (Doc. 1);
5. Plaintiffs' claims for tax refunds in all three cases are dismissed with prejudice; and
6. all three cases will be terminated.

_____
UNITED STATES DISTRICT JUDGE